242 So.2d 229

**O. Romaine RUSSELL et al.**

**v.**

**Honorable John J. McKEITHEN, Governor of the State of Louisiana.**

**No. 50915.**

Dec. 14, 1970.

Eugene J. Murret, New Orleans, for defendant-appellee-applicant.

William H. Baker, Asst. Dist. Atty., Dodd, Hirsch, Barker, Avant & Wall, John L. Avant, C. Paul Barker, Baton Rouge, Ford E. Stinson, Benton, for amicus curiae.

Guy A. Modica, Baton Rouge, for plaintiff-appellants-appellees.

HAMLIN, Justice:

Certiorari was directed to the Court of Appeal, First Circuit, for review of its judgment which affirmed in part the trial court's judgment—denial of prayer for injunctive relief and the issuance of a writ of mandamus—and reversed the judgment in part by declaring portions of Sections 2 and 3 of Act 216 of 1970 unconstitutional. Art. VII, Sec. 11, La.Const. of 1921; La.App., 239 So.2d 656; 256 La. 895, 240 So.2d 232.

The Legislature of 1970 passed Act 216, enacted into law on July 3, 1970, when signed by the Governor; it recites, in part:

"A. The nineteenth judicial district court shall have ten judges. * * *

"Section 2. There is created in the nineteenth judicial district three new divisions, to be known as Divisions H, I and J. The divisions of the nineteenth judicial district which are already existing on the effective date of this Subsection shall be occupied by the present judges and their successors in office, and Divisions H, I and J shall be filled by appointment by the Governor until the judges of said divisions are elected as provided herein. The designation of these divisions is for the purpose of nomination and election only.

"Section 3. The additional judges provided for in this Act for the nineteenth judicial district shall have the same qualifications and shall be elected at the same time and in the same manner, shall serve the same term of office and shall be entitled to the same compensation and expenses, payable from the same sources, as is now or may hereafter be provided for the other judges of the nineteenth judicial district court; provided, however, that the newly created judges for Divisions H, I and J shall be elected at a special election to be called by the Governor to

be held on the first Tuesday next following the first Monday of November, 1972. The judges so elected shall serve terms to expire at the same time as the terms of the other judges of said district court, and each of said judges shall be a resident or domiciled within East Baton Rouge Parish which comprises the nineteenth judicial district."

In substance, the above act provides that three new judges will be elected at a special election to be called by the Governor to be held on a specified date; it also provides that the judgeships will be temporarily filled by appointments made by the Governor, and that the appointees will serve until judges are elected at the special election.

On July 21, 1970, O. Romaine Russell, James C. Dixon and Gloria Gelpi (plaintiffs herein), appearing individually and as representatives of all of the duly qualified voters of the Parish of East Baton Rouge, brought this suit, in which they sought:

1. An injunction prohibiting the Governor from making interim appointments pending a special election;

2. An order of mandamus requiring the Governor to call a special election to fill the three newly created judgeships; and

3. A judgment declaring that Sections 2 and 3 of Act 216 of 1970 Regular Session of the Louisiana Legislature are unconstitutional only as far as such sections provide for the filling of Divisions H, I and J by appointment of the Governor and the calling of the special election on the first Tuesday following the first Monday in November of 1972.

On July 30, 1970, the Governor issued a proclamation ordering a special election to be held on Tuesday, November 7, 1972, throughout the Nineteenth Judicial District, composed of the Parish of East Baton Rouge, for the election of the additional judges of said district.

Also on July 30, 1970, the Governor directed the Secretary of State to issue commissions as follows:

"Richard E. Burton, Baton Rouge, as Judge, Division H,

"Eugene W. McGehee, Baton Rouge, as Judge, Division I,

"Louis S. Quinn, Baton Rouge, as Judge, Division J,

"Nineteenth Judicial District

"(additional Judges created by Act 216 of 1970)"[1]

---

1. Thus, if the Democratic primary is held approximately in July, 1972, these appointees will have been in office for about two years; and, if they should be candidates, which is highly probable, they will have the advantage of submitting themselves to the voters as "sitting judge," without having been previously elected by the people.

On July 31, 1970, the trial court rendered judgment in which it declared Act 216 of 1970 constitutional and the appointments made pursuant thereto valid. The court overruled the dilatory exception of unauthorized use of summary proceeding, decreed that the alternative writ of mandamus issued July 24, 1970, be recalled and vacated, and ordered that the rule nisi issued July 24, 1970, ordering the defendant to show cause why a preliminary writ of injunction should not issue, be recalled and vacated.

Plaintiffs appealed, and in the Court of Appeal defendant waived his rights under the dilatory exception filed in the trial court; neither party questioned the mootness of the prayer for injunctive relief. The Court stated that the major question it had to meet was whether or not the Legislature had the constitutional authority to designate the manner in which the new judgeships are to be filled. It rendered a negative judgment, supra, and stated:

"It does not appear consistent nor logical to us to hold that the clear provisions of Article VII, Section 33 as amended by Act No. 754 of 1954, which deals specifically with the filling of the office of a newly created district judge, must yield to the general language contained in Article V, Section 11. The Act of 1954 had for its express purpose the requirement that additional district judgeships be filled by election. To hold

that the Legislature under Article V, Section 11 still reserved the right to prescribe the mode of filling the office is repugnant to the clear intent of the Act of 1954 and tends to nullify its own provisions which excepts from the Governor's appointive power those offices whose appointment or election is otherwise provided for.

"Lastly the appellants have sought an order of mandamus which would require the Governor to call a special election to fill the newly created judgeships. It is noted that the Governor has issued a call for such an election. While Article VII, Section 33 of the Constitution requires the Governor to call a special election the time of calling such an election is left entirely to his sound discretion. Neither the courts nor the Legislature have the power to interfere with discretion exercised in accordance with constitutional mandate and any attempt on the part of the Legislature to do so is also in contravention of Article VII, Section 33 and is unconstitutional."

On certiorari in this Court, defendant assigns the following errors to the judgment of the Court of Appeal:

"1. The Court of Appeal erred in ruling that the additional judgeships created by Act No. 216 of 1970 are not 'offices created by' the Legislature within the meaning of Article V, Section 11 of the Louisiana Constitution.

"2. The Court of Appeal erred in concluding that Article VII, Section 33 of the Louisiana Constitution supercedes and negates Article V, Section 11, and prohibits the Legislature from authorizing interim appointments pending the special election."

In an amicus curiae brief filed herein, the Assistant District Attorney, Second Judicial District, alleges:

(1) The Legislature can provide appointment of newly created judges by the Governor.

(2) The Governor may appoint interim judges.

(3) This Court has recognized the intent of the framers of the Constitution to accommodate the increase or decrease in the amount of litigation.

The Louisiana AFL-CIO, in an amicus curiae brief filed herein in support of defendant, alleges an additional error to those alleged by the defendant, supra; it recites:

"The Honorable, the First Circuit Court of Appeal erred when, in reaching its decision herein, it did not consider the Constitution as an entire instrument; it did not make any attempt to harmonize the provisions of the Constitution, nor any attempt to give effect to both Article 5, Section 11, as well as Article 7 Section 33; it used no judicial restraint in implying limitation upon the power of the Legislature, but readily found an implied prohibition in Article 7, Section 33, which seriously limits the power of the Legislature under Article 5, Section 11; and certainly, the Honorable Court of Appeal gave to Act 216 no benefit of the presumption of constitutionality."

Plaintiffs urge that the unanimous judgment of the Court of Appeal should be affirmed and defendant cast for all costs. Honorable Ford E. Stinson filed an amicus curiae brief in this Court in support of plaintiffs' contentions.

In arguing that the additional judgeships created by Act 216 of 1970 are "offices" created by the Legislature within the meaning of Section 11 of Article V of the Constitution, and that the Governor may make appointments to such offices, defendant relies on the case of State ex rel. Garland v. Guillory, 184 La. 329, 166 So. 94, Dec. 13, 1935, rehearing denied, January 6, 1936.

At the time the Guillory decision was rendered, Section 11 of Article V provided:

"He [the Governor] shall nominate, and, by and with the advice and consent of the Senate, appoint all officers whose offices are established by this Constitution and whose appointment, or election, is not herein otherwise provided for; except that the Legislature may provide the mode of filling all offices created by it."

Section 33 of Article VII provided:

"District judges shall be elected by a plurality of the qualified voters of their respective districts, in which they shall have been actual residents for two years next preceding their election. They shall be learned in the law, and shall have practiced law in this State five years previous to their election. District judges under this Constitution shall be elected on the Tuesday after the first Monday in November, 1924, and every six years thereafter."

Section 34 of Article VII provided:

"The Legislature may rearrange the judicial districts, and by a two-thirds vote of the membership of each house, may increase or decrease the number of judges in any district."

Act No. 3 of the Fourth Extra Session of the Legislature of 1935, effective October 1, 1935, rearranged the old Thirteenth and Fifteenth Judicial Districts. In Section 3 of the Act, it was provided that, "The Governor shall appoint a Judge and a District Attorney for the re-arranged Thirteenth District, to serve until their successors are elected. * * *"

The constitutionality of Act No. 3 of the Fourth Extra Session of 1935 was attacked in State ex rel. Garland v. Guillory, supra. The trial court held that Section 3 of the act was unconstitutional insofar as it provided for the appointment by the Governor of a judge in the rearranged Thirteenth Judicial District, instead of by election as provided by Section 33 of Article VII of the Constitution.

On appeal in the Guillory Case, this Court held (184 La., at p. 350, 166 So., at p. 100) that, "The Legislature having the specific constitutional authority conferred upon it by section 34 of article 7 of the Constitution to 'increase,' or *create* new judges, in the rearrangement of the old Thirteenth and Fifteenth judicial districts, necessarily had plenary power to *create* a new judge for the rearranged Thirteenth judicial district, as well as a new judge for the rearranged Fifteenth judicial district, and to require that these judges be appointed by the Governor under the authority of section 11 of article 5, conferring upon the Legislature the constitutional right to 'provide the *mode* of filling all offices *created* by it.'" The then Supreme Court further held (184 La., at 347, 166 So., at 99) that, "Section 34 of article 7 of the Constitution, as well as section 11 of article 5 of the Constitution, are express and special provisions or laws." It said:

"Section 34 of article 7 of the Constitution specifically confers upon the Legislature the constitutional authority to '*increase*' or *create* new judges, in the rearrangement of judicial districts of the state; and section 11 of article 5 of the Constitution specifically confers upon

the Legislature the constitutional authority to 'provide *the mode* of filling all offices *created* by it.'

"It follows, necessarily, that the Legislature had full constitutional authority to provide that the new judge created by it in the new Thirteenth district should be appointed by the Governor."

In the body of the Guillory decision (184 La., at 338, 166 So., at 97) this Court stated, "In other words, under the present Constitution, a judge is the only public officer whose term of office or salary cannot *be curtailed or affected* by an act of the Legislature during the term or period for which he was elected, 'except as otherwise provided in this Constitution,' which means, of course, that a judge may also be removed from office, during his term, by impeachment, or by address out of office, or by suit to remove from office brought in a court of competent jurisdiction, under article 9 of the present Constitution, relative to 'Impeachment and Removal From Office.' "[2]

Within a few months after the Guillory decision, the Legislature of 1936 passed Act 67 which amended Section 33 of Article VII of the Constitution. The amendment gave appointive powers to the Governor when a new judgeship was created during the existing term of other judges of the

district. The Constitutional Amendment, adopted November 3, 1936, recited:

"*   *   *

"Section 33. District judges shall be elected by a plurality of the qualified voters of their respective districts in which they shall have been actual residents for two years next preceding their election. They shall be learned in the law, and shall have practiced law in the State of Louisiana five years previous to their election. They shall be elected at the time now prescribed by law, and every six years thereafter; provided that, when for any judicial district of this State, the Legislature shall, in the manner prescribed by the Constitution, create one or more additional judges, such newly created judge or judges shall be appointed by the Governor for the first term, which shall not extend beyond that of the other district judges then in office. Thereafter, such judge or judges shall be elected at the time fixed by law for the election of district judges throughout the State of Louisiana.

"*   *   *"

In 1954, the Legislature again amended Section 33 of Article VII, Act 754 of 1954, adopted November 2, 1954. The amendment changed the mode of filling newly

---

2.  Associate Justice Land was the author of the opinion; he was joined by Associate Justices Brunot, Higgins and Fournet.

Chief Justice O'Niell and Associate Justices Rogers and Odom dissented.

created judgeships from appointment by the Governor to an election by the people at a special election called by the Governor.[3] The amendment recites:

"Section 33. District Judges shall be elected by a plurality of the qualified voters of their respective districts in which they shall have been actual residents for two years next preceding their election. They shall be learned in the law, and shall have practiced law in the State of Louisiana five years previous to their election and shall be a member in good standing of the Louisiana State Bar Association. They shall be elected at the time now prescribed by law and every six years thereafter; provided that, when in any judicial district of this state, the Legislature shall, in the manner prescribed by the Constitution, create one or more additional judge, such newly created judge or judges shall be elected at a special election called by the Governor for the first term which shall not extend beyond that of the other District Judge's term in office. Thereafter, such judge or judges shall be elected at the time fixed by law for the election of District Judges throughout the State of Louisiana."

A determination must be made as to whether the amended Section 33 of Article VII of the Constitution prevails and can be read together with Section 11 of Article V, supra, which has not been amended. A determination must also be made as to whether, despite the amendment of Section 33 of Article VII, the Governor can appoint temporarily new judges, as provided in Act 216 of 1970, by virtue of the power granted to him in Section 11 of Article V to appoint officers whose offices are established by the Constitution and whose appointment is not otherwise provided for in the Constitution.

---

3. In his brief, Honorable Ford E. Stinson alleges:
"I would like to specifically call to the Court's attention that I was a member of the House of Representatives of the Louisiana State Legislature in the year 1954 and was also co-author of Act No. 754 of 1954 which has been quoted heretofore in this brief. At the time of the passage of this bill in the Legislature, I explained to the members of the House of Representatives that one of the purposes of the proposed Constitutional Amendment was good government, and that hopefully, this would be achieved, especially in view of the fact that it would prevent the Governor from having any control over a member of the judiciary as this Amendment would prevent the Governor from having appointive control for newly created judgeships. To the best of my knowledge and belief, there was no confusion or misunderstanding with any member of the Legislature at this time and Act No. 754 of 1954 was passed by the Legislature and ultimately approved by the people with the obvious intention of prohibiting the Governor from filling newly created judgeships by appointment.
"It is respectfully submitted that the decision of the First Circuit Court of Appeal of Louisiana should be affirmed."

"In construing a constitutional provision, it is the duty of the court to have recourse to the whole instrument, if necessary, to ascertain the true intent and meaning of any particular provision, and if there is an apparent repugnancy between different provisions, the court should harmonize them if possible. The rules of construction of constitutional law require that two sections be so construed, if possible, as not to create a repugnancy, but that both be allowed to stand, and that effect be given to each. 11 Am.Jur., Constitutional Law, § 53, pp. 661, 662." Meyers v. Flournoy, 209 La. 812, 25 So.2d 601. See, Central La. Elec. Co. v. Louisiana Pub. Serv. Comm'n, 251 La. 532, 205 So.2d 389. "The safest rule of interpretation is to look to the nature and object of the particular powers, duties and rights with all the lights and aid of contemporaneous history, and to give to the words such operation and force consistent with their legitimate purposes as may fairly secure and attain the ends proposed." State v. Roberson, 225 La. 74, 72 So.2d 265.

■ We find that the above constitutional provisions when read together are not repugnant to each other and can be enforced without material and substantial conflict. Meyers v. Flournoy, 209 La. 812, 25 So.2d 601.

Article VII of the Constitution treats of the Judiciary Department. Section 34 thereof grants the Legislature the power to rearrange judicial districts and to increase or decrease the number of district judges in any district. Section 33, as amended in 1954, provides for the *election* of district judges; as stated supra, it also provides that when the Legislature exercises the power granted in Section 33 by creating new judges, such judges shall be *elected* at a special election called by the Governor for the first term. No provision is made in Section 33 for interim appointments; it must be assumed that when the people voted for the amendment, they intended to exclude interim appointments. See, Stokes v. Harrison, 238 La. 343, 115 So.2d 373. We conclude that Sections 33 and 34 of Article VII pertain exclusively to the Judiciary; the election of district judges, Section 33, is provided for in a section of the Constitution *other* than Section 11 of Article V.

The Governor has many executive powers. Section 11 of Article V, the Executive Department, grants him wide powers of appointment. It does not, however, grant him the power to appoint for interim periods new district judges. As explained supra, their election is provided for elsewhere in the Constitution. Section 33 of Article VII and Section 11 of Article V are both operative and may be read together without conflict.

■ The Legislature of this State, unlike the Congress of the United States

which can do nothing which the Federal Constitution does not authorize, may exercise any power not prohibited by the State Constitution. Bozant v. Campbell, and another, 9 Rob. 411. The Legislature is vested with absolute right of legislation, except when restricted by the organic law. State v. Gutierrez, 15 La.Ann. 190. Therefore, in the enactment of a statute such as Act 216 of 1970, the Legislature is supreme, except when restricted by constitutional authority. Conley v. City of Shreveport, 216 La. 78, 43 So.2d 223. "The general rule is that every statute is presumed to be constitutional, and the court is bound to uphold the constitutionality of a statute when it is reasonably possible to do so. Every consideration of public need and public policy upon which the legislation could rationally have been based should be weighed by the court, and the statute should be upheld as being valid and enforceable unless it clearly is inconsistent with provisions of the state or federal constitutions. * * *" City of Natchitoches v. State, La.App., 221 So.2d 534, 544. See, Buras v. Orleans Parish Democratic Executive Com., 248 La. 203, 177 So.2d 576.

■ In this matter, the Constitution in Section 33 of Article VII, as amended in 1954, provides a method of filling newly created judgeships—election; the Legislature has provided a different method in part of Section 2 of Act 216 of 1970, supra—interim appointments by the Governor until election. The Constitution in Section 33 of Article VII recites that a special election *shall* be called for the election of new judges; part of Section 3 of Act 216 of 1970 sets a specific date for the election. Sections 2 and 3 of Act 216 of 1970 are therefore partially in conflict with the Constitution.[4]

"Where the Constitution has provided the method of filling offices, the Legislature may not provide for filling them in any other manner." Bloomfield v. Thompson, 136 La. 519, 67 So. 352. Cf. Higginbotham v. City of Baton Rouge, 190 La. 821, 183 So. 168, aff. 306 U.S. 535, 59 S. Ct. 705, 83 L.Ed. 968.

We conclude that those portions of Sections 2 and 3 of Act 216 of 1970, supra, which are in conflict with Section 33 of Article VII can have no effect to alter the Constitution's mandate. Greater Livingston Water Co. v. Louisiana Public Service Comm'n, 246 La. 273, 164 So.2d 325. The Constitutional provision is free of ambiguity and expresses the Legislative intent. We must give it effect.

---

4. The Court of Appeal declared unconstitutional that portion of Section 2 of Act 216 of 1970 providing that the additional judgeships shall be filled by appointment by the Governor and that portion of Section 3 directing the Governor to call a special election on the first Tuesday next following the first Monday of November, 1972. In all other respects, the Act was declared constitutional.

Police Jury of Parish of St. Charles v. St. Charles Par. Waterworks Dist. No. 2, 243 La. 764, 146 So.2d 800.

We find that plaintiffs have borne their burden of demonstrating the partial constitutional infirmity of Sections 2 and 3 of Act 216 of 1970. Reynolds v. Louisiana Board of Alcoholic Bev. Con., 249 La. 127, 185 So.2d 794.

For the reasons assigned, the judgment of the Court of Appeal, First Circuit, is affirmed. All such costs in these proceedings as authorized by law shall be borne by defendant.

BARHAM, J., concurs for the reasons assigned by the Court of Appeals (239 So.2d 656).